UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| TERRY WASILEWSKI, | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | 3:10 CV 1857 WWE |
| | : | |
| ABEL WOMACK, INC. | : | |
| Defendant. | : | |

### MEMORANDUM OF DECISION ON DEFENDANT ABEL WOMACK'S PENDING MOTIONS

Plaintiff Terry Wasilewski brought this action seeking relief under the Connecticut Product Liability Act ("CPLA"), Conn. Gen. Stat. § 52-577m *et seq.*  Specifically, plaintiff alleges that a defective forklift caused her serious injury due to its defective design and negligent maintenance.

Defendant Abel Womack, Inc. has filed a motion for summary judgment and a motion to strike the expert testimony of Frederick Heath.  For the following reasons, the motion to strike the expert testimony will be denied and the motion for summary judgment will be granted in part and denied in part.

### BACKGROUND

The parties have submitted statements of facts with accompanying exhibits and affidavits that reveal the following factual background.

At all relevant times, plaintiff worked for the Dayville Distribution Center of the Rite Aid Corporation ("Rite Aid") located at 500 Forbes Road in Dayville, Connecticut. In 2007, plaintiff received her driving evaluation and certification from Rite Aid to operate Reach Fork Trucks.

On November 12, 2008, plaintiff sustained injuries due to an accident while she was driving a forklift that defendant Abel Womack had sold "as is" to Rite Aid in 2001.

Plaintiff alleges that defendant Abel Womack was responsible for the maintenance of the forklift pursuant to a maintenance contract.

The forklift, known as a Model 21, is a stand-up, rear entry forklift designed by The Raymond Corporation ("Raymond").  For this model, Raymond offered an optional rear operator guard that was designed to prevent objects from intruding into the operator compartment.  However, this rear operator guard is not standard equipment for the Model 21.  In its standard configuration, the Model 21 is designed with an open back compartment.

Raymond also offers rear posts as an optional feature for trucks used in environments where first level horizontal rack beams are located above the top of the operator compartment, but below the overhead guard.  However, as the Features Brochure indicates, the addition of the posts causes an increased turning radius, reduced operator visibility, and increased pinch points.

Rite Aid has acquired hundreds of lift trucks for its facilities.  However, it opted not to purchase the rear operator guard or rear posts for the Model 21 at issue.  Its Dayville Distribution Center did not present the intrusion hazards that the optional rear operator guards and rear posts are designed to address.

Rite Aid has trained all of its employees that operate stand-up forklifts to exit the operator compartment as quickly as possible in off-dock and tip-over events.

At the time of the accident, plaintiff was operating the Model 21 in a congested aisle.  When plaintiff heard a horn, she turned her head and diverted her eyes from her path of travel.  She drifted off course and struck racking containing boxes of candy and other goods.  Plaintiff asserts that her foot was crushed by a pallet that intruded into the

2

operator compartment.

The Abel Womack inspection report written by Mark Savoie, a Service Technician, indicates that plaintiff's leg was struck "inside [the operator] compartment" by a "pallet sticking out of" the racking.  Mr. Savoie testified that he based this statement on accounts from other individuals about how the accident happened.

A Rite Aid employee, Arthur Benoit, wrote a post-accident report, stating that plaintiff was "trying to avoid parked equipment and a pallet sticking out" when she drove into "reserve racking."  Benoit was not a witness to the accident and his account of it in the report represented his "best guess."

An EMT who arrived on the scene after the accident stated that he had concluded that plaintiff's foot was outside of the truck when the collision occurred.

Plaintiff testified that she was trained to look in the direction of travel at all times, to maintain control of the forklift at all times, and to keep all parts of her body within the confines of the operator compartment while operating the truck.  The operator manual and the warning decal on the Model 21 contain the following instructions:  "Keep all portions of the body inside the operator's compartment while operating truck" and "When stopping stay inside compartment until truck comes to a complete halt."

## DISCUSSION

Motion to Strike Expert Testimony of Frederick Heath

Defendant maintains that plaintiff's expert, Frederick Heath, is unqualified to speak on matters related to forklift design and that his testimony lacks the requisite indicia of reliability.

The district court has a "gatekeeping" role pursuant to Federal Rule of Evidence

702 and is charged with ensuring that an expert's testimony rests on a reliable foundation and is relevant to issues presented in the case.  Amorgianos v. Nat'l R.R. Passenger Corp., 303 F.3d 256, 265 (2d Cir. 2002).  A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.  Fed. R. Evid. 702.

The Court should consider (1) whether a theory or technique can be (and has been) tested, (2) whether the theory or technique has been subjected to peer review and publication, (3) a technique's known or potential rate of error, and the existence and maintenance of standards controlling the technique's operation, and (4) whether a particular technique or theory has gained general acceptance in the relevant scientific community.  Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 597 (1993); Amorgianos, 303 F.3d at 266.  The burden is on the party proffering the expert testimony to lay a foundation for its admissibility, and a court must consider the totality of the expert witness's background when evaluating expert qualifications.  Kuzmech v. Werner Ladder Co., 2012 WL 6093898, *7 (D. Conn. 2012).

Heath opines that the Model 21 was defective because it did not include rear posts or rear operator guards as standard rather than optional equipment.  Further, he maintains that the Model 21 was defective because it failed to provide a smooth, non-snagging transition from the surface of the main body to the outside surface of the

4

outriggers.  In making these assertions, Heath assumed that the accident occurred when the Model 21 was "grabbed" by a bumper located at the base of the rack uprights causing the reach truck to enter the rack on the left side of the aisle, and that plaintiff's injuries occurred when the corner of a pallet entered the operator compartment and made contact with the plaintiff's lower left leg as the truck entered the rack.

Defendant asserts that Heath is not an expert specific to forklift design and injury analysis and causation.  Heath is, however, a mechanical engineer with experience with material handling equipment and safety analysis.  According to his curriculum vitae, he has more than fifteen years in the field of design, manufacturing and testing of hydraulic pneumatic and electro-mechanical lifting and load bearing devices; he has authored articles in this area, including "Lift Accidents, a Case Study" and "Automative Lifts" for "The Shop Safety/OSHA Compliance Guide."  Although Heath has no bio-engineering experience, he has experience in assessing accidents and safety of mechanical material handling equipment.  Rule 702 requires a witness to be qualified by knowledge, skill, experience, training or education.  Kuzmech, 2012 WL 6093898, at *7.  Here, Heath's education and extensive background in mechanical engineering, accidents and safety will assist the trier of fact on the issues relevant to this case.  The Court finds that Heath is a qualified expert as to forklift design, injury analysis and causation.

Defendant asserts that Heath's causation theory based on the intruding pallet is inconsistent with the physical evidence of the accident.  However, plaintiff intends to present evidence concerning the existence of protruding pallets at the time of the accident.  The actual facts relevant to the accident and causation represent issues for

5

the trier of fact to determine.

According to defendant, Heath's conclusions are unreliable and constitute speculation because he has not inspected the scene, the subject truck, taken measurements, reviewed medical records or reviewed photographs. However, plaintiff represents that Heath did review voluminous amounts of evidence produced through discovery, photographs of the accident scene and the Model 21, and deposition testimony. Plaintiff sets forth that Heath's opinion that the rear operator guards and posts should be standard to the Model 21 is grounded in extant testing by Raymond of the equipment, industry material and correspondence with other experts in the field. Heath's opinion is not so unreliable that it should be precluded. Defendant may attack the credibility of Heath's testimony on cross examination.

Motion for Summary Judgment

A motion for summary judgment will be granted where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The burden is on the moving party to demonstrate the absence of any material factual issue genuinely in dispute. American International Group, Inc. v. London American International Corp., 664 F. 2d 348, 351 (2d Cir. 1981). In determining whether a genuine factual issue exists, the court must resolve all ambiguities and draw all reasonable inferences against the moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." Bryant v. Maffucci, 923 F. 2d 979, 982 (2d Cir.), cert. denied, 502 U.S. 849 (1991).

The burden is on the moving party to demonstrate the absence of any material factual issue genuinely in dispute.  American International Group, Inc., 664 F.2d at 351. In determining whether a genuine factual issue exists, the court must resolve all ambiguities and draw all reasonable inferences against the moving party.  Anderson, 477 U.S. at 255.

If a nonmoving party has failed to make a sufficient showing on an essential element of his or her case with respect to which he or she has the burden of proof, then summary judgment is appropriate.  Celotex Corp., 477 U.S. at 323.  If the nonmoving party submits evidence which is "merely colorable," legally sufficient opposition to the motion for summary judgment is not met.  Anderson, 477 U.S. at 249.

Strict Liability Based on Design Defect

Defendant maintains that plaintiff cannot establish a strict liability claim based on the forklift's defective design with or without the opinion of the retained expert, Frederick Heath.   Defendant argues that plaintiff cannot prove the existence of a design defect, and that strict liability does not apply to a seller of used "as is" products.

Plaintiff must establish that the forklift had a defective design and that such defect was a proximate cause of her injuries.  Vitanza v. Upjohn Co., 257 Conn. 365, 373 (2001).  To prevail on a design defect claim, plaintiff must prove that the product is unreasonably dangerous, which is defined as dangerous to an extent beyond that which would be contemplated by the ordinary consumer purchaser who possesses ordinary knowledge common to the community as to its characteristics.  Potter v. Chicago Pneumatic Tool Co., 241 Conn. 199, 214 (1997).  Where complex products are involved, Connecticut courts employ a modified consumer expectations test that

7

considers whether the risk of danger inherent in the design of the product outweighs its utility.  Moss v. Wyeth Inc., 872 F. Supp. 2d 162 (D. Conn. 2012).

This Court agrees that a forklift is a complex machine beyond the purview of the ordinary consumer and that expert testimony is necessary to establish the existence of a design defect.  See Brown v. Raymond Corp., 432 F.3d 640, 644 (6th Cir. 2005).  The Court will leave plaintiff to her proof as to the existence of a design defect pursuant to the modified consumer expectations test.

Defendant maintains that summary judgment is appropriate because plaintiff cannot establish causation, especially in light of defendant's expert reports.  This Court finds that genuine issues of fact exist as to causation and will leave plaintiff to her proof.

Defendant argues further that a claim of strict liability cannot be maintained against defendant as a seller of used goods sold "as is" without alteration.  In support of its position, defendant cites King v. Damiron, 113 F.3d 93 (7th Cir. 1997).  In King, the Seventh Circuit noted that no Connecticut cases on the issue existed, and therefore, it interpreted Connecticut law without reference to any actual Connecticut decisional law. King recognized that there is no "clear consensus among other jurisdictions" concerning the applicability of strict liability to sellers of used goods such as defendant. Subsequent to King, a Connecticut superior court held that Connecticut product liability law made no distinction between sellers of new and used goods.  Stanton v. Carlson Sales, Inc., 45 Conn. Supp. 531, 550 (Conn. Super. 1998).  Construing all inferences in favor of the non-moving plaintiff, the Court must deny summary judgment on defendant's argument that strict liability is not applicable.

8

Failure to Warn and Provide Adequate Instructions

Defendant argues that plaintiff's claim of failure to warn and provide instructions fails for lack of evidentiary support.  Plaintiff's opposition does not appear to have addressed defendant's argument. "Federal courts may deem a claim abandoned when a party moves for summary judgment on one ground and the party opposing summary judgment fails to address the argument in any way." Taylor v. City of New York, 269 F. Supp. 2d 68, 75 (E.D.N.Y. 2003).  Accordingly, the Court will grant summary judgment on this claim.

Punitive Damages

Defendant argues that plaintiff has failed to set forth any evidence supporting her claim for punitive damages, which requires a showing of reckless disregard for the rights of others and intentional violations of those rights.  Dunn v. Zimmer, Inc., 2005 WL 756538, *11 (D. Conn.).  Plaintiff has not asserted an opposition to this argument. Accordingly, the Court will grant summary judgment on the claim for punitive damages.

Negligent Service

Plaintiff alleges that defendant had failed to properly inspect the forklift and allowed to it to operate with a defective safety system.  Defendant maintains that plaintiff's claim that defendant is liable for negligent servicing of the Model 21 fails because she has not proved that the forklift malfunctioned or was in an unsafe condition due to its maintenance.

The Court agrees.  Plaintiff has not adduced any evidence suggesting that the forklift was not functioning properly or that the accident had a causal link to the forklift's

malfunctioning due to negligent service.  Accordingly, the Court will grant summary judgment on this claim.

## **CONCLUSION**

For the foregoing reasons, the Motion to Strike is DENIED (Doc. #116); and the motion for summary judgment is GRANTED (Doc. #114) as to the claims of failure to warn, negligent service, and punitive damages, and DENIED as to the claim design defect.

Within fifteen days of this ruling's filing date, plaintiff is instructed to file an amended complaint that reflects this ruling.

Dated this _3rd_ day of March, 2014 at Bridgeport, Connecticut.


_____/s/_____
WARREN W. EGINTON
SENIOR UNITED STATES DISTRICT JUDGE